558 So.2d 843 (1990)
Ronald ESTELLE
v.
STATE of Mississippi.
No. 07-KA-59281.
Supreme Court of Mississippi.
March 7, 1990.
*844 Gail D. Nicholson, Chester D. Nicholson, Nicholson & Nicholson, Gulfport, for appellant.
Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and ANDERSON, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Ronald Estelle was convicted in the Circuit Court of Harrison County, Mississippi, on a charge of burglary and was sentenced to life without parole in the custody of the Mississippi Department of Corrections as an habitual offender. He has appealed to this court and assigns three errors in the trial below:
I.
THE APPELLANT WAS DENIED HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.
II.
THE APPELLANT WAS DEPRIVED A FAIR TRIAL AS MANDATED BY THE SIXTH AND FOURTEENTH AMENDMENTS AND THEIR MISSISSIPPI STATE CONSTITUTIONAL COUNTERPARTS.
III.
THE APPELLANT WAS SENTENCED AS A HABITUAL OFFENDER WITHOUT CONSTITUTIONALLY SUFFICIENT DOCUMENTATION OF PRIOR CONVICTIONS.

FACTS
On July 15 or 16, William Baker, who was employed by McCaffrey's Body Shop as painter's helper, was at the Salvation Army when he overheard Ronald Estelle (Estelle) talking to someone about getting some batteries and radiators from a garage. Baker asked him where he was going to get them and Estelle replied from a garage which Baker knew to be owned by Pat McCaffrey. Baker agreed to let Estelle use his car to "line up" a pickup truck. *845 Baker then told Mr. McCaffrey about Estelle's plan. The next morning Estelle told Baker he had gotten the material and asked Baker if he could again use his car. McCaffrey called the police and Detective Brian Smith arrested Estelle when he brought Baker's car back about 4:30 that afternoon.
Estelle refused to talk to Smith and requested to speak to Detective Tom Johnson. Johnson had previously investigated an allegation that Estelle had burglarized a car which belonged to Estelle's ex-wife and found that Estelle was telling the truth when he denied the allegation. Smith and Johnson interviewed Estelle for approximately two or three hours. Estelle tried to get Johnson to promise him a lighter sentence or lower bond in exchange for the location of a drug dealer. Johnson refused. Finally, after Johnson stated he was going to go home, Estelle confessed that he had broken into the garage and had stolen the batteries, radiators, and bumpers.
In addition to the above facts which were developed at the trial and presented to the jury, Patrick McCaffrey, owner of the burglarized garage, testified Estelle telephoned him and admitted that he had stolen the property.

I., II.
On the day of the trial, Estelle was represented by Attorney Douglas Ainsworth, who was employed by Estelle. He contends on this appeal that his attorney did not present the defense which he, Estelle, wanted him to present and that his counsel was ineffective. For a discussion of this issue, it is necessary to consider the history of Estelle's lawyer's representation in this case.
At the beginning, Attorney Otto Wusnack was appointed to represent Estelle. On September 16, 1986, the attorney filed a motion: 1) for an omnibus hearing; 2) for discovery under Rule 4.06; 3) to suppress statements; 4) for production of documents and evidence; and 5) to dismiss. On September 23, 1986, after a hearing, the trial judge overruled the motion to suppress and dismiss. On October 8, 1986, the State filed a motion to amend the indictment against Estelle to add that the State would seek a sentence of life without parole pursuant to Mississippi Code, Annotated, § 99-19-83 (Supp. 1986). On October 16, 1986, Wusnack was allowed to withdraw after Estelle became discontented with his representation and Attorney Gerard F. Smith was appointed to defend Estelle.
On October 24, 1986, Attorney Smith filed a motion to withdraw stating that he had tried to interview Estelle on two occasions and Estelle refused to talk to him. While the motion was pending, Attorney Smith filed a motion to reinstate bond, motion for a psychiatric exam for Estelle and a motion for a transcript of the suppression hearing. Each motion was granted. Estelle then hired Attorney Douglas R. Ainsworth and Smith was relieved of his duties.
Prior to trial, Ainsworth presented motions to suppress, to quash the indictment and to dismiss the habitual offender segment of the indictment. Those motions were prepared by one of Estelle's previous attorneys. The Court took up the motions to suppress and quash and delayed the motion to dismiss the habitual portion of the indictment until prior to the sentencing phase. Ainsworth stated that he had reviewed the transcript of the suppression hearing and his position was that the decision not to suppress was wrong and he thought that there were questions not adequately answered. Ainsworth also introduced a motion in limine to prevent the State from mentioning Estelle's prior record in its case-in-chief, which the trial judge sustained. Estelle complained there were some things that were not being done to protect his rights and complained about the extradition papers issued for him while he was in the state of Michigan.
Attorney Ainsworth made an argument to suppress the confession and the trial court held the issue had previously been argued and ruled on. The judge explained to Estelle that the question of extradition was moot because Estelle was then before the court. Ainsworth next argued that the indictment should be quashed because it *846 did not accurately reflect the name in which the property was held and the trial judge stated that it was a matter of proof. Estelle requested that the Court rule on the matter before any witnesses were called.
Two witnesses were called by the State and after the second witness had completed his testimony, the trial judge excused the jury and told Estelle that he was talking too loud to his attorney. The judge stated that the last thing he heard Estelle say was that he didn't care what the Court thought, he was going to do what he wanted. After another comment from Estelle, the trial judge threatened to gag him.
Estelle stated he wanted to dismiss his attorney because the attorney was not objecting to statements made by the witness which Estelle thought were "ridiculous". The Court then instructed Ainsworth to object to whatever Estelle wanted regardless of whether there was a proper legal basis. Attorney Ainsworth told the trial judge that Estelle wanted to discharge him and Estelle told the judge that Ainsworth wasn't bringing out pertinent points he wanted brought out. Upon questioning by the court, Estelle refused to give details of the alleged deficiencies in Ainsworth's representation. He stated, "I will take it up with another attorney." The court noted that this was the third attorney on the case and then the following took place:
THE DEFENDANT: Right. And he's a paid attorney. The other two were court appointed and I don't think the Court has the jurisdiction to compel me to accept a paid attorney, if I want to dismiss him at any stage in my proceedings.
THE COURT: If you want to dismiss him 
THE DEFENDANT: I dismiss him as of right this morning.
THE COURT: I'm requiring that he stay in the case, if necessary on a court-appointed basis right now and continue representation until the end of the trial. If you want to take over cross-examination, that's your privilege.
THE DEFENDANT: I still object to him being appointed to me by the Court as of right now.
Estelle stated that the district attorney along with the police department had violated his rights. The trial judge noted that Estelle had been before him three times and the first time the court was required to have Estelle bound and gagged; that Estelle had not gotten along with any lawyer involved in the case; and that he had no reason to believe that he would get along with any other. Attorney Ainsworth advised the Court that Estelle would be conducting cross-examination and he would be assisting. The next witness was Billy Enroth who had bought some of the stolen material. Estelle began asking him questions about things Estelle allegedly sold to him. The Judge excused the jury and stated to Estelle that it sounded like he was going to get into an area where he would bring out that the police had investigated him before on things like this. Estelle told the judge that he was trying to establish that he had never sold Enroth stolen material. The following transpired:
THE DEFENDANT: I understand, your Honor, but this is my line of defense. Have I at no time deny [sic] the fact that I have committed this crime, and I will not. I am just 
THE COURT: Do you appreciate what you just opened the door to?
THE DEFENDANT: Yes. I'm going to finish saying. I know this is a self-incriminating statement. I understand that. I know all my rights, your Honor, and even though no one has told me them from yourself on down, you know.
After the witness was excused, but before the jury came back, Judge Thomas told Estelle:
THE COURT: Let me get this on the record before I take a recess. Ronald, I'm just telling you I can't sit here as judge and try the case for you, okay?
THE DEFENDANT: I understand that, your Honor.
THE COURT: I have to be neutral. Right now I'm not really being neutral because I'm trying to cover for you in *847 front of the jury. And I say that in the legal term. You almost buried yourself right there to the jury. You were giving that jury the impression, the distinct impression that you had previously sold stolen property to this man before and the police had investigated. That's why I pulled the jury out. Watch what you ask somebody, because I'm not going to continuously sit here and try to monitor how your defense is going.
And so the trial and harangue went on and on with the appellant, Estelle, acting pro se, but with Attorney Ainsworth present and being ready and willing to assist Estelle in the case.
This Court has held that the defendant's request during trial to dismiss his defense counsel and to continue the case until another attorney could be retained or appointed is untimely and that the decision to grant such a motion lies within the sound discretion of the trial court. Bostic v. State, 531 So.2d 1210, 1214 (Miss. 1988); Harrison v. State, 520 So.2d 1352, 1353 (Miss. 1987); Collins v. State, 369 So.2d 500 (Miss. 1979).
Estelle cites Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 2540-1, 45 L.Ed.2d 562 (1975). However, Faretta is distinguished from the case-at-bar where Estelle wanted another lawyer, and when the trial judge refused to appoint new counsel, took an active part in his own defense. As stand-by counsel, Attorney Ainsworth was without authority, discretion or control and the charge that he rendered constitutionally ineffective assistance is without merit. Moore v. State, 142 Ga. App. 145, 235 S.E.2d 577 (1977); State v. Randall, 530 S.W.2d 407 (Mo. App. 1975).
When Estelle dismissed Ainsworth the Court stated:
I'm requiring that he stay in the case, if necessary on a court-appointed basis right now and continue representation until the end of the trial. If you want to take over cross-examination, that's your privilege.
Estelle argues that Attorney Ainsworth had not looked at the State's evidence of Estelle's prior convictions; however, the record reveals that position is without merit:
THE COURT: Let me make one inquiry just to make sure about something. I take it that you received a copy of the State's file, in toto, and therefore, you received a copy of the evidence they have of the prior convictions; is that correct?
MR. AINSWORTH: Yes, I have.
THE COURT: All right. I mean there was no question but 
MR. AINSWORTH: No question.
THE COURT:  that you were coming into Court today facing a burglary charge with a potential sentence of life under the habitual offender statute, right?
MR. AINSWORTH: That's correct.
Estelle claims that Ainsworth had not read the transcript of the suppression hearing, but the record reflects the following:
THE COURT: Well, looking at this  at the motion here, it appears  I don't really see what the difference between that and the previous motion is. Have you reviewed the transcript?
MR. BURDICK: Yes, sir... .
THE COURT: Mr. Ainsworth, you have a copy, I understand, of the transcript?
MR. AINSWORTH: I have a copy of the transcript and I have reviewed it... .
Estelle has failed to overcome either of the two prongs in Strickland v. Washington, 466 U.S. 668 at 694, 104 S.Ct. 2052 at 2068, 80 L.Ed.2d 674 at 698 (1984).
After careful review of the record with reference to these two assigned errors, we hold that they are without merit.

III.
Estelle contends that he was sentenced as an habitual offender without constitutionally sufficient documentation of prior convictions. The State relies on two convictions of Estelle to proceed under Mississippi Code Annotated § 99-19-83. First, Estelle was convicted on December 1, 1972, in the United States District Court for the Eastern District of Michigan for possession with intent to distribute narcotics (heroin) *848 and was sentenced to five years in prison. He was discharged on March 1, 1976. Estelle was convicted on May 2, 1978, by a jury in Macomb County, Michigan, on a charge of armed robbery. He was sentenced to serve ten years and was discharged on December 21, 1984.
Estelle contends that State's exhibits 1 and 2 were not the evidentiary equivalent of an actual judgment of conviction and the proof was insufficient of a prior felony conviction under DeBussi v. State, 453 So.2d 1030 (Miss. 1984) and Phillips v. State, 421 So.2d 476 (Miss. 1982). In King v. State, 527 So.2d 641, 646 (Miss. 1988), this Court held that certified copies of a defendant's commitment papers are competent evidence of previous convictions for purposes of proving that a defendant is an habitual offender pursuant to Mississippi Code Annotated § 99-19-83.
Estelle next argues that his previous guilty pleas do not on their face show that they were "knowing and voluntary" as required by Phillips. However, the State's exhibits reveal that Estelle was convicted by a jury of armed robbery so the only issue is whether Estelle's plea of guilty to distributing heroin was "knowingly and voluntarily" made.
Estelle did not dispute either of the prior convictions as having been given involuntarily even though the lower court specifically asked him whether he wished to do so. We are of the opinion that the burden is on the appellant to introduce evidence to make a prima facie case showing that his guilty plea was constitutionally invalid which he has failed to do. People v. Wade, 708 P.2d 1366, 1368 (Colo. 1985); Smith v. State, 477 N.E.2d 857, 865 (Ind. 1985); State v. Holden, 375 So.2d 1372, 1376 (La. 1979); State v. Garcia, 95 N.M. 246, 620 P.2d 1271, 1275 (1980); State v. Hairston, 27 Ohio App.3d 125, 499 N.E.2d 1268, 1270 (1985); Middleton v. State, 67 Md. App. 159, 506 A.2d 1191, 1201 cert. denied 308 Md. 146, 517 A.2d 771 (1986); Mathis v. State, 249 Ga. 454, 291 S.E.2d 489, 493 (1982) cert. denied 463 U.S. 1214, 103 S.Ct. 3552, 77 L.Ed.2d 1399 (1983); State v. Branch, 743 P.2d 1187, 1192-1193 (Utah 1987) cert. denied 485, U.S. 1036, 108 S.Ct. 1597, 99 L.Ed.2d 911 (1988).
We are of the opinion that the convictions introduced by the State on the sentencing phase were regular, accurate, and fulfill the requirements of Section 99-19-83 and that there is no merit in assigned error number III. Therefore, the judgment of the lower court is affirmed.
CONVICTION OF BURGLARY AND SENTENCE OF LIFE WITHOUT PAROLE AS AN HABITUAL OFFENDER AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
PITTMAN, J., not participating.