811 So.2d 346 (2001)
Michael DAVIS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00966-COA.
Court of Appeals of Mississippi.
February 6, 2001.
*348 Gail P. Thompson, Oxford, Attorneys for Appellant.
*349 Office of the Attorney General By Jeffrey A. Klingfuss, Attorneys for Appellee.
Before SOUTHWICK, P.J., LEE, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Michael Davis was found guilty of auto theft and sentenced as an habitual offender to six years in the Mississippi Department of Corrections without the possibility of parole, probation, suspension or reduction. On appeal, Davis asserts the following errors:
I. DID THE LOWER COURT ERR IN INFORMING DAVIS OF HIS RIGHT TO REPRESENT HIMSELF, AND DID DAVIS' TRIAL COUNSEL PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL?
II. DID THE TRIAL COURT ASK AN IMPROPER QUESTION OF DEBRA DAVIS, A WITNESS FOR THE DEFENSE?
III. WAS THE VERDICT OF THE LOWER COURT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

FACTS
¶ 2. Michael Davis conspired to steal and strip a car of it's tires. Davis acted as a look-out while his accomplice, Melvin Hubbard, stole the car. A witness, Susan McCracken, saw the car being stolen and a look-out car that followed. Both Hubbard and McCracken testified that Davis was the individual involved in the crime. Davis was convicted and sentenced as a habitual offender to six years in the Mississippi Department of Corrections without the possibility of parole, probation, suspension or reduction.

ANALYSIS

I. DID THE LOWER COURT ERR IN INFORMING DAVIS OF HIS RIGHT TO REPRESENT HIMSELF, AND DID DAVIS' TRIAL COUNSEL PROVIDE INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 3. Before the venire panel had been voir dired by the trial court, Davis, his appointed attorney, Thomas Pearson, Dan Hinchcliff and the trial judge met in chambers. Davis explained that he did not feel that Pearson had spent enough time with him in order to effectively represent him; and, therefore, wished to represent himself. The court advised Davis that Pearson was capable counsel and warned Davis of the dangers of self-representation. The court pointed out that Davis had successfully delayed the trial five times by continuance and that on the sixth setting a mistrial had to be declared due to improprieties on the part of Davis' wife. The court reminded Davis that he was granted a continuance six months earlier due to the fact that Davis was not satisfied with Pearson as counsel. The court told Davis at that time that he was entitled to hire someone other than Pearson as counsel, advising against Davis representing himself. However, Davis failed to hire another attorney and continued to be represented by Mr. Pearson at the time of the trial.
¶ 4. Mr. Pearson conducted the voir dire for the defense and stated that the defense had no questions for the first witness. After the State questioned their second witness, the court asked Davis if he wished to represent himself or allow Pearson to continue. Davis stated that he wanted "to ask her questions" himself. The court instructed Pearson to remain and provide assistance to Davis as he represented himself. Davis went on to question the witnesses *350 and make a closing statement. The record reflects that Pearson questioned one witness, that witness being Davis, and made objections throughout the trial. Both Davis and Pearson were allowed to make closing statements.
¶ 5. Davis now complains that the court failed in its duty to adequately inform him of his right to represent himself as well as the dangers thereof. Davis claims that he was incompetent to represent himself and, for that reason, allowed inadmissable hearsay evidence to be admitted.
¶ 6. "The Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." Scott v. Illinois, 440 U.S. 367, 374, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979). "Absent a valid waiver of this right, `[i]f an uncounseled defendant is sentenced to prison, the conviction itself is unconstitutional.'" United States v. Haymer, 995 F.2d 550, 552 (5th. Cir. 1993); United States v. Eckford, 910 F.2d 216, 218 (5th Cir.1990); United States v. Follin, 979 F.2d 369, 376 (5th Cir.1992). A waiver of the right to assistance of counsel may occur at any time, before or during the trial, but it must be made with a full understanding of its disadvantages and consequences. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Boyd v. Dutton, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), the United States Supreme Court stated:
The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused whose life or liberty is at stake is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.
Id.
¶ 7. Nevertheless, an accused has a constitutional right to represent himself and to present his own case pro se without an attorney. In Gray v. State, 351 So.2d 1342 (Miss.1977), appeal after remand, 375 So.2d 994 (Miss.1979), this Court set out the following:
Mississippi Constitution Article 3, section 26 (1890) provides in part:
"In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, ..."
The refusal to permit defendant to argue his case is in direct violation of the above constitutional provisions and requires reversal.
Id. at 1345. See also Ballard v. State, 366 So.2d 668 (Miss.1979). "The motion of an indigent prisoner requesting the court to dismiss his court-appointed attorney is addressed to the sound discretion of the trial judge." Burnett v. State, 285 So.2d 783, 783 (Miss.1973). A defendant is not entitled to a continuance in order to raise funds with which to employ an attorney. Burnett, 285 So.2d at 784.
¶ 8. The record reflects that the trial judge adequately informed Davis of his constitutional right to represent himself as well as the dangers and responsibilities of self-representation. Davis made an intelligent and competent waiver of assigned counsel. Furthermore, Davis had been granted a continuance in order to find new counsel six months prior to the trial. Davis has no foundation to now claim that he did not understand and was not thoroughly explained his rights involving representation *351 and self-representation when the lower court reviewed such information with him twice.
¶ 9. While it is unclear from the brief, Davis implies that he was provided with ineffective assistance of counsel. It is not made clear by the brief what aspect of assistance of counsel was ineffective. Rather, Davis claims that he was incompetent to represent himself and, for that reason, allowed inadmissable hearsay evidence to be admitted. While the defendant has a right to self-representation, "[H]e may not use this right to play a `cat and mouse' game with the court, ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of Counsel." Evans v. State, 273 So.2d 495 (Miss.1973). The record reflects the trial judge forewarned Davis of the dangers and responsibilities of self-representation. Davis chose to ignore those warnings and proceed on his own behalf. It is far too late to argue that he lacked the legal knowledge to represent himself.
¶ 10. It has been established by the Mississippi Supreme Court that as stand-by counsel, a defense attorney is "without authority, discretion or control and the charge that he rendered constitutionally ineffective assistance is without merit." Estelle v. State, 558 So.2d 843 (Miss.1990). Estelle held that where a defendant declines appointed counsel and proceeds to represent himself with appointed counsel only standing by to provide assistance if called upon that the defendant will not be heard to complain on appeal of ineffective assistance of counsel. Estelle, 558 So.2d at 847. The case sub judice is one such case.
¶ 11. Even if Pearson was classified as co-counsel, the assertion of ineffective assistance of counsel would still fail. The assertion of ineffective assistance of counsel is addressed under the two-part test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and followed by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476 (Miss. 1984). A successful completion of this test is paramount to Davis' argument. He must successfully meet both prongs. Under Strickland and Stringer, Davis must show that the counsel's performance was so deficient that it constituted prejudice. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. The asserting party must also show that "but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court." Rankin v. State, 636 So.2d 652, 656 (Miss.1994). The defendant bears the burden of demonstrating that both prongs have been met. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985). There is a strong but rebuttable presumption that an attorney's performance falls within a wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic. Vielee v. State, 653 So.2d 920, 922 (Miss.1995). Application of the Strickland test is applied with deference to counsel's performance, considering the totality of the circumstances to determine whether counsel's actions were both deficient and prejudicial. Conner v. State, 684 So.2d 608, 610 (Miss.1996). The test is to be applied to the overall performance of the attorney. Strickland, 466 U.S. at 695, 104 S.Ct. 2052. With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy." Scott v. State, 742 So.2d 1190 (¶ 14) (Miss.Ct.App.1999); *352 Cole v. State, 666 So.2d 767, 777 (Miss. 1995); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984). Neither of the two prongs of the Strickland test were met by Davis.

II. DID THE TRIAL COURT ASK AN IMPROPER QUESTION OF DEBRA DAVIS, A WITNESS FOR THE DEFENSE?
¶ 12. Davis called his wife, Debra Davis in an attempt to establish an alibi. On cross-examination, the prosecutor inquired of Mrs. Davis' whereabouts on the day of the auto theft. The prosecutor also asked Mrs. Davis to respond to several accusations and statements that were made by Hubbard and other witnesses for the state. Mrs. Davis either denied each accusation made or claimed that she did not remember throughout the prosecutor's questioning. After finding Mrs. Davis to be completely uncooperative and unresponsive to repeated questions, the prosecution tendered the witness.
¶ 13. The record reflects the following dialog between the trial judge and Mrs. Davis occurred immediately after the prosecutor finished his cross-examination.
By the Court: Thank you. Mr. Hinchcliff, before you finish and before the defendant or his counsel commence to ask questions on redirect, I have one question for the witness. Mrs. Davis, you've stated numerous times that you don't remember various things that you allegedly told at that time deputy Milton Palmer. You said you don't recall. You don't remember. My question to you is do you deny that you
By Mr. Pearson: May it please the Court, may we approach.
By the Court: Yes, sir.
By Mr. Pearson: Your Honor, we would have to take exception to the Court going into that. I don't think it's proper for the Court to ask a question of that nature about this witness.
By the Court: What's improper about the Court asking the question?
By Mr. Pearson: You're opening up a field to introduction of evidence that would not be admissible at this time.
By the Court: Mr. Hinchcliff?
By Mr. Hinchcliff: Your Honor, it's my understanding the Court has always been permitted to ask questions for sake of clarification or to make the picture clearer to the jury, and further, the only time there would be an abuse is if it was extensive and taking over the trial.
By the Court: That's one question.
By Mr. Pearson: We strongly object to the Courtthe jury could misinterpret that.
By the Court: All right. The objection is noted for the record. Again, Ms. Davis, my question to you, for clarification to the jury, do you deny having made those statements to Mr. Palmer? You said you didn't remember, and my question is for clarification reasons. Do you deny having made those statements?
By Mr. Pearson: Your Honor, she said she doesn't recall. I don't see how she could admit or deny either one. We object to the question on that ground. She's already testified she doesn't recall.
By the Court: Overruled.
By the Witness: Yes, sir, I deny it.
By the Court: All right. Thank you. In view of that, Mr. Hinchcliff, if you have any follow up, you may follow up. And if not, the witness is now tendered to defense side for redirect examination.

*353 By Mr. Hinchcliff: Yes, sir, Your Honor. I understood that she says she does deny it.
By the Court: Yes.
By Mr. Hinchcliff: No further questions.
By the Court: Mr. Pearson, Mr. Davis.
By Mr. Pearson: We'd like to approach the bench, Your Honor.
By the Court: Yes, sir.
By Mr. Pearson: Comes now the defendant and moves the Court to grant a mistrial in this cause on grounds that the questioning by the Court has first indicated a partiality towards the State, and secondly, rendered admissible testimony and evidence that otherwise would not have been admissible; all which are very injurious to the cause of the defendant. We move the Court to grant a mistrial.
By the Court: Okay. That motion is denied. Would the parties again approach. I just want you to hear this. The single question that the Court has allowed the witness, Ms. Debra Johnson [Ms. Davis], to say she denied it or didn't deny it, she said she denied it, the Court does not find that this prejudices the case one way or the other.
Again, the basis for the question or sole basis for the question was for clarification to the jury. I did not want the jury to feel that her failure to recall to mean that it was true or that it was not true. And just for their truthful understanding and understanding the import of her testimony, that question was asked for that purpose and that purpose only. That's it.
By Mr. Hinchcliff: Thank you, Your Honor.
¶ 14. "The very position of a judge during trial makes each comment unusually susceptible of influencing a juror or the jury." Hannah v. State, 336 So.2d 1317, 1321 (Miss.1976). See also Thompson v. State, 468 So.2d 852, 854 (Miss. 1985); Stubbs v. State, 441 So.2d 1386, 1389 (Miss.1983). However, Rule 614(b) of the Mississippi Rules of Evidence makes it clear that the court has the power to interrogate witnesses. It reads: "the court may interrogate witnesses, whether called by itself or by a party." M.R.E. 614(b). The judge only abuses this authority when he abandons his judicial detachment and assumes an advocacy position. Jones v. State, 223 Miss. 812, 79 So.2d 273 (1955). In the case of Griffin v. State, the Court said: "The circuit judge has an undoubted right to interrogate witnesses in the interest and for the purpose of developing the truth of the matter at issue, and he likewise has a discretion to determine when a necessity or propriety therefor exists." Griffin v. State, 171 Miss. 70, 156 So. 652, 653 (Miss.1934). See also Hannah v. State, 336 So.2d 1317, 1322 (Miss.1976); Jones, 223 Miss. 812, 79 So.2d 273; Breland v. State, 180 Miss. 830, 178 So. 817 (1937).
¶ 15. The trial judge did not abuse his discretion in questioning Mrs. Davis. To the contrary, the judge was attempting to discover the truth of the matter at issue in the midst of testimony from an extremely uncooperative witness. This question posed by the trial judge was a rephrasing or repetition of an entire line of questions made by the prosecutor which Mrs. Davis refused to comply.

III. WAS THE VERDICT OF THE LOWER COURT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 16. The decision to grant or deny a motion for new trial is discretionary with the trial court. McClain v. State, 625 So.2d 774, 781 (Miss.1993). In order to preserve the issue for consideration on *354 appeal, the defendant must raise the issue that the verdict was against the overwhelming weight of the evidence as a ground for his motion for new trial. Howard v. State, 507 So.2d 58, 63 (Miss.1987). In Ford v. State, 753 So.2d 489, 490 (Miss. Ct.App.1999), we held that:
[i]n determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice.
(citing Danner v. State, 748 So.2d 844, 846 (Miss.Ct.App.1999)). See also Ford v. State, 753 So.2d 489, 490 (Miss.Ct.App. 1999); Herring v. State, 691 So.2d 948, 957 (Miss.1997); Turner v. State, 726 So.2d 117, 125 (Miss.1998); Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). "Any less stringent rule would denigrate the constitutional power and responsibility of the jury in our criminal justice system." Hughes v. State, 724 So.2d 893, 896 (Miss. 1998). "In determining whether a jury verdict is against the overwhelming weight of the evidence, the court accepts as true the evidence favorable to the State." Wetz v. State, 503 So.2d 803, 812 (Miss.1987). See also McClain, 625 So.2d at 781; Van Buren v. State, 498 So.2d 1224, 1229 (Miss. 1986). It has also been established that "the jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." Meshell v. State, 506 So.2d 989, 991 (Miss.1987). See also Hilliard v. State, 749 So.2d 1015, 1017 (Miss.1999); Lewis v. State, 580 So.2d 1279, 1288 (Miss.1991); Gandy v. State, 373 So.2d 1042, 1045 (Miss.1979).
¶ 17. Davis was identified by his coindictee, Melvin Hubbard, as an accomplice in the auto theft. It has been established by the Mississippi Supreme Court that: "the testimony of an accomplice or a co-conspirator my be sufficient to sustain a conviction, the general rule is inapplicable in those cases where the testimony is unreasonable, self contradictory, or substantially impeached." Brown v. State, 682 So.2d 340, 344 (Miss.1996). Mrs. McCracken, the eye-witness to the auto theft, corroborated the testimony of Melvin Hubbard. Therefore, Hubbard's testimony was not unreasonable, self contradictory or substantially impeached. We hold that the verdict was not against the overwhelming weight of the evidence.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY OF CONVICTION OF AUTO THEFT AND SENTENCE OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT POSSIBILITY OF PAROLE, PROBATION, SUSPENSION OR REDUCTION IS AFFIRMED. SENTENCES IMPOSED SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. COSTS OF THIS APPEAL ARE ASSESSED TO THE TUNICA COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, LEE, IRVING, MYERS and CHANDLER, JJ., concur.