CARLTON, J.,
 

 for the Court.
 

 ¶ 1. Herman Jackson, Jr., was driving on Highway 61 near Clarksdale with no driver’s license and with an expired inspection sticker when a Mississippi Highway Patrolman stopped him for speeding. On June 1, 2005, a Coahoma County grand jury indicted Jackson on two counts of possession of a controlled substance; the drugs were found as a result of the traffic stop. The first count of the indictment charged Jackson with possession of marijuana in an amount between 30 and 250 grams. The second count of the indictment charged Jackson with possession of cocaine salt in an amount between .1 gram and 2 grams. After a jury trial in which Jackson aggressively represented himself with the assistance and advice of court-appointed counsel, he was convicted of a lesser charge of possession of marijuana in an amount less than 30 grams and also of possession of cocaine as charged in the indictment. Jackson was sentenced to pay
 
 *924
 
 a fine of $250 on Count I, and he was sentenced to serve eight years in the custody of the Mississippi Department of Corrections on Count II. Feeling aggrieved, Jackson appeals pro se, seeking a new trial and asserting several perceived errors. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. On February 12, 2005, Walter Duncan, a patrolman with the Mississippi Highway Patrol, stopped Jackson on Highway 61 for speeding. The officer also noticed that the vehicle’s inspection sticker had expired. Jackson was unable to produce a valid driver’s license or proof of insurance for Officer Duncan. Officer Duncan proceeded to arrest Jackson, and as he was patting Jackson down, he found a plastic bag containing a green leafy substance in Jackson’s back pocket. The passenger was then removed from the car, and the vehicle was searched. Officers found a plastic bag containing a white powder substance under the ashtray in the car. Then, two more bags of the green leafy substance were found in the car — one on the driver’s seat, and another under it. Jackson was taken to the Coahoma County Sheriffs Department. In the booking area at the sheriffs department, Jackson was searched more thoroughly. The search in the booking area revealed yet another plastic bag, and this bag contained a white powder substance. The bags were determined by the State Crime Laboratory to contain cocaine and marijuana.
 

 ¶ 3. Jackson’s case proceeded to trial on January 19, 2007. As its first witness, the State called Officer Duncan. Jackson’s court-appointed attorney, Allan Shackel-ford, cross-examined Officer Duncan regarding the specifics of where the drugs were found and inconsistencies in his reports, specifically inconsistent dates on the tickets he issued and the report he filed. Dissatisfied with his attorney’s cross-examination, Jackson requested the court to allow him to proceed pro se. The trial judge reluctantly allowed Jackson to proceed, but he ordered Shackelford to remain at the defense table and advise Jackson during the trial. The trial judge advised Jackson that it was not in his best interest to represent himself.
 

 ¶ 4. Jackson was convicted of possession of cocaine and of the lesser offense of possession of marijuana in an amount less than 30 grams. Jackson appeals his convictions, asserting numerous perceived errors on the part of the trial court: (1) the trial court did not adequately warn Jackson of the danger of self-representation; (2) Jackson received ineffective assistance of counsel; (3) the trial judge failed to recuse himself from the trial and the sentencing hearing; (4) there was misconduct by the prosecutor; (5) the indictment was defective; and (6) the jury instructions were improper. We find no merit to Jackson’s assignments of error and affirm.
 

 DISCUSSION
 

 I. Whether Jackson was adequately warned of the perils of self-representation.
 

 ¶ 5. Jackson’s court-appointed counsel cross-examined the State’s first witness, Officer Duncan, a state highway patrolman. After this cross-examination, Jackson made a motion before the trial court to proceed without court-appointed counsel. Jackson was unhappy with Shackelford’s performance and thought that he would be better off representing himself at trial. Jackson now claims that his Sixth Amendment right to counsel was violated because the trial judge failed to adequately warn him of the perils of self-representation. This Court has held that “[a] waiver of the right to assistance of counsel may occur at any time, before or
 
 *925
 
 during the trial, but it must be made with a full understanding of its disadvantages and consequences.”
 
 Davis v. State,
 
 811 So.2d 346, 350(¶ 6) (Miss.Ct.App.2001) (citations omitted). Jackson claims that because the trial judge did not adequately warn him of the disadvantages and consequences of self-representation, his waiver was not knowing and intelligent.
 

 ¶ 6. Rule 8.05 of the Uniform Rules of Circuit and County Court outline the procedure necessary to protect the rights of defendants who wish to proceed pro se. Rule 8.05 requires that the trial judge inform the defendant that he has a right to court-appointed counsel; that he has a right to conduct his own defense; that the rules of evidence, procedure, and courtroom protocol will apply to the defendant; that those rules are difficult and his defense will be hampered if he proceeds without a lawyer; and that the right to proceed pro se usually increases the likelihood of an unfavorable trial outcome.
 

 ¶ 7. Jackson’s argument that he was not adequately warned fails, however, because the record is clear that the trial judge warned Jackson that it was not in his best interest to represent himself. During pretrial motions, Jackson made a complaint to the trial judge claiming that Shackelford’s assistance in his case was ineffective because he and Shackelford had an argument at one of their meetings. The trial judge informed Jackson: “Now, let me say this, Mr. Shackelford is a good attorney. He has been, in my experience, one that can win a lot of cases. He can help you. If there’s anybody that could help you, he’s it.... I would suggest, and just tell you, that your best interest is to work with Mr. Shackelford today.... He’s been in this business a long time and I have seen him win a lot more than he’s lost. Work with him today and it will do you good, okay.”
 

 ¶ 8. During trial, after Jackson requested that he be allowed to proceed pro se without Shackelford, the trial judge stated, “You don’t know how to ask the questions. Mr. Jackson, it’s just not in your best interest to do that.” Jackson replied, “Well, I clearly understand what you are saying but still I would like to represent myself or have a mistrial or whatever....” The trial judge then agreed that they would try the arrangement with Jackson questioning his own witnesses for a while. He informed Jackson that he would be “bound by the same rules that everybody else is. If there’s objections, I’m going to have to stop you. You are going to have to follow what everybody else does that practices law, okay?” The trial judge reluctantly granted Jackson’s motion to represent himself, but he ordered Shackelford to remain at the defense table and advise Jackson throughout his trial. Jackson was adequately warned that it was not in his best interest to proceed without counsel. This assignment of error is without merit.
 

 II. Whether Jackson received ineffective assistance of counsel.
 

 ¶ 9. For an ineffective assistance of counsel claim to succeed, a defendant must satisfy the two-pronged test established in
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 
 Stringer v. State,
 
 627 So.2d 326, 328 (Miss. 1993). The test requires that the defendant first show that counsel was deficient; he must then show that the deficiency prejudiced his defense.
 
 McQuarter v. State,
 
 574 So.2d 685, 687 (Miss.1990) (citing
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. 2052). “The defendant must show that there is a reasonable probability that but for these errors by counsel, the defendant would have received a different result from the trial court.”
 
 Nicolaou v. State,
 
 612 So.2d 1080, 1086 (Miss.1992) (citing
 
 Fisher v. State,
 
 532 So.2d 992, 997 (Miss.1988)). Further, the defendant must overcome a
 
 *926
 
 “strong but rebuttable presumption that counsel’s conduct falls within a broad range of reasonable professional assistance.”
 
 McQuarter,
 
 574 So.2d at 687.
 

 ¶ 10. Because Jackson chose to proceed pro se, he cannot now complain of Shackelford’s performance as his stand-by counsel:
 

 It has been established by the Mississippi Supreme Court that as stand-by counsel, a defense attorney is “without authority, discretion or control and the charge that he rendered constitutionally ineffective assistance is without merit.”
 
 Estelle v. State,
 
 558 So.2d 843 (Miss. 1990).
 
 Estelle
 
 held that where a defendant declines appointed counsel and proceeds to represent himself with appointed counsel only standing by to provide assistance if called upon that the defendant will not be heard to complain on appeal of ineffective assistance of counsel.
 
 Estelle,
 
 558 So.2d at 847. The case
 
 sub judice
 
 is one such case.
 

 Davis,
 
 811 So.2d at 351(¶ 10). Because Jackson insisted on representing himself at trial, he cannot now complain that counsel was deficient.
 

 ¶ 11. However, Shackelford did remain at the defense table to advise Jackson if he asked for help. In some cases, when a defendant does not effectively waive his right to counsel, courts recognize a type of hybrid representation. Our supreme court has explained this procedure as follows:
 

 In order to strike a balance between the right to counsel and the right to self-representation many courts have turned to “hybrid representation” as a middle ground. Hybrid representation is considered to encompass both the participation of the defendant in the conduct of his trial when he has not effectively waived the assistance of an attorney to defend him, and the participation by an attorney in the conduct of the trial when the defendant is defending pro se. Courts commonly refer to the role of the attorney in a situation in which a defendant has not effectively waived assistance of an attorney as that of “co-counsel.” The role of the attorney in a situation where the defendant has effectively waived counsel and is proceeding pro se is that of “standby” or “advisory” counsel. The former tends to involve a more active role in the representation of the defendant than the latter.
 

 Metcalf v. State,
 
 629 So.2d 558, 562 (Miss. 1993). To the extent that Shackelford’s involvement in Jackson’s defense might be considered hybrid representation, we will consider the merits of Jackson’s claim that Shackelford rendered ineffective assistance.
 

 ¶ 12. Jackson attempts to support his claim of ineffective assistance of counsel with approximately eighteen perceived deficiencies. Essentially, Jackson claims that Shackelford failed to make certain motions, objections, or ask certain questions. Jackson also finds fault with Shack-elford’s failure to challenge his arrest, to seek to suppress evidence, to call certain witnesses, to make an opening statement, or to present any defense. Jackson claims that Shackelford was unprepared for trial and made disparaging remarks to him.
 

 ¶ 13. There is a strong presumption that trial counsel’s actions are strategic, and Jackson has failed to rebut that presumption.
 
 See Hall v. State,
 
 735 So.2d 1124, 1127(¶ 11) (Miss.Ct.App.1999). Furthermore, this Court has held that “ ‘[cjounsel’s choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy’ and will not stand as support for an ineffective assistance of counsel claim.”
 
 Hancock v. State,
 
 964 So.2d 1167, 1176(¶ 18) (Miss.Ct.
 
 *927
 
 App.2007) (quoting
 
 Carr v. State,
 
 873 So.2d 991, 1008(¶ 27) (Miss.2004)). Whether or not to make an opening statement is also a strategic decision.
 
 Gilliard v. State,
 
 462 So.2d 710, 716 (Miss.1985).
 

 ¶ 14. Furthermore, the record shows that Jackson presented pretrial motions to the trial judge on his own behalf before the trial began. The trial judge ruled on each of Jackson’s pretrial motions as they were presented to him. Jackson also sought suppression of certain evidence against him, cross-examined witnesses, called his own witnesses, and presented his own defense. There is no support in the record for Jackson’s allegations that Shackelford was unprepared for trial or that he made disparaging remarks to Jackson during the trial.
 

 ¶ 15. Jackson cannot satisfy either prong of the
 
 Strickland
 
 test to show that he received ineffective assistance of counsel, and we find that this issue is without merit.
 

 III. Whether the trial court erred in denying the defendant’s motion to recuse.
 

 ¶ 16. In his third assignment of error, Jackson asserts that the trial judge erred in not recusing himself from the trial and the sentencing hearing. Jackson believes that the trial judge should have re-cused himself from Jackson’s case because he was biased against Jackson. Jackson made a pretrial motion for the judge to recuse himself, which the trial judge denied.
 

 ¶ 17. In determining whether a trial judge should have recused himself, this Court must consider the following:
 

 [T]he [trial] judge is presumed qualified and unbiased. This presumption may only be overcome by evidence showing beyond a reasonable doubt that the judge was biased or not qualified. If a reasonable person, knowing all the circumstances[,] would doubt the judge’s impartiality, the judge is required to recuse him or herself from the case[,] but the decision not to recuse is reviewed by this Court under a manifest abuse of discretion standard.
 

 Bryan v. Holzer,
 
 589 So.2d 648, 654 (Miss. 1991). Jackson’s claim stems from the trial judge’s action in a pretrial hearing where the judge reacted to Jackson’s courtroom behavior. Amid Jackson’s interruptions, the trial judge stated:
 

 Would you shut up! Now, you don’t get along with this man; you don’t get along with that man, and they are both trying to help you. And you are sitting up here arguing with me, the Judge.... I would say that you need to learn to get along a little bit better than you are doing, Mr. Jackson. You are hurting yourself. You are not supposed to get in front of this bench and say things on the record that could hurt you. You need somebody to help you....
 

 Moments later, the trial judge apologized for “getting short” with Jackson. Jackson reminded the trial judge of this incident in his pretrial motion to have the trial judge recuse himself. The trial judge assured Jackson: “I have no ill will towards you[,] and I promise you that we can give you a fair trial.”
 

 ¶ 18. Jackson has presented no evidence to lead us to doubt the trial judge’s impartiality. He has not pointed to any specific rulings which indicate that the trial judge was biased or unqualified to hear the case. This Court has held that there must be evidence in the record in order to overcome the presumption that a trial judge was impartial.
 
 Jackson v. State,
 
 962 So.2d 649, 663(¶ 31) (Miss.Ct.App.2007). Moreover, “[m]ere speculation is insufficient to raise reasonable doubt as to the validity of the presumption that the trial
 
 *928
 
 judge was qualified and unbiased.”
 
 Id.
 
 (citing
 
 Farmer v. State,
 
 770 So.2d 953, 958(¶ 13) (Miss.2000)). We find no evidence in the record to indicate that the trial judge was impartial; therefore, this issue is without merit.
 

 IV. Whether there was misconduct on the part of the prosecutor.
 

 ¶ 19. Jackson’s next assignment of error alleges that the prosecutor and other court officials attempted to deceive him and the court. Our supreme court has articulated the standard of review when prosecutorial misconduct has been alleged as follows:
 

 The standard of review for prosecutorial misconduct has been clearly established. “Where prosecutorial misconduct endangers the fairness of a trial and the impartial administration of justice, reversal must follow.”
 

 Goodin v. State,
 
 787 So.2d 639, 653(¶ 41) (Miss.2001) (quoting
 
 Acevedo v. State,
 
 467 So.2d 220, 226 (Miss.1985)). Jackson makes numerous allegations under this assignment of error; however, the allegations can be summarized into two alleged errors: (1) the prosecutor made an inappropriate comment regarding Jackson’s guilt during the State’s closing argument; and (2) Officer Duncan’s testimony violated Rule 403 of the Mississippi Rules of Evidence.
 

 (1) Whether the prosecutor commented improperly on Jackson’s guilt during closing argument.
 

 ¶ 20. Jackson claims that the prosecutor’s statements in closing argument were improper. The prosecutor stated: “He’s guilty. He’s told you he’s guilty, and I think you should find him guilty in both counts.” Jackson cites to
 
 United States v. Grant,
 
 971 F.2d 799, 810-11 (1st Cir.1992) for the proposition that any representation as to the prosecutor’s personal belief in the guilt of an accused is improper. However, we do not find that the prosecutor interjected any personal belief in Jackson’s guilt into his closing statement. Jackson had admitted during his testimony that he was in possession of the drugs that officers testified to finding on his person. He denied only possession of the drugs in the vehicle. Jackson apparently was able to persuade the jury members; they found him guilty only of the misdemeanor marijuana charge and of possession of cocaine.
 

 ¶ 21. Jackson finds further error with the prosecutor’s statement to the jury regarding the cocaine charges. The State’s closing argument explained to the jury the two different amounts of cocaine-the one found on Jackson’s person, the other found in the car he was driving-and the two different amounts of marijuana-again, the one found on Jackson, the other in the car. The amount of cocaine found on Jackson was .3 gram and the amount found in the car was .3 gram. Possession of either one or both of the bags of cocaine amounted to a felony.
 
 See
 
 Miss.Code Ann. § 41-29-139(c)(1)(B) (Rev.2005). For the marijuana charge, it mattered whether the jury believed that Jackson possessed the marijuana found on his person
 
 and
 
 the marijuana found in the car, or whether he possessed only the marijuana found on his person, because the marijuana found on Jackson’s person amounted to only a misdemeanor amount.
 
 See
 
 Miss.Code Ann. § 41-29-139(c)(2)(A) (Rev.2005). Therefore, this assignment of error is without merit.
 

 (2) Whether Officer Duncan’s testimony violated Rule W3 of the Mississippi Rules of Evidence.
 

 ¶ 22. Jackson argues that Officer Duncan’s testimony violated Rule 403 because it was prejudicial to his defense. Rule 403
 
 *929
 
 of the Mississippi Rules of Evidence states:
 

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 

 Neither Jackson nor his court-appointed attorney made any objection to the testimony of Officer Duncan. Officer Duncan was the arresting officer who performed the search of Jackson and the vehicle. Jackson seems to believe that the prosecutor allowed Officer Duncan to testify falsely. There is no evidence that Officer Duncan testified falsely and, certainly, no evidence that the prosecutor knew of any perjury. The officer did testify that he put the wrong date in his report, and he admitted his mistake. Officer Duncan explained the error in the report during his testimony and was cross-examined by Jackson and by Jackson’s attorney.
 

 ¶ 28. Jackson makes numerous other arguments regarding the trial judge’s handling of his case, including that he was assaulted outside the courtroom by a deputy, that the judge and prosecutor conspired against him, and that the attorneys for the State and Jackson’s own court-appointed counsel worked to deceive him and the court regarding his case. None of Jackson’s allegations have any basis of support in the record, and we consider them meritless.
 

 ¶ 24. We find no evidence in the record of prosecutorial misconduct. Therefore, this issue is without merit.
 

 V. Whether the indictment was defective.
 

 ¶ 25. Jackson argues that the indictment was defective because there are two separate statute numbers used and because he was indicted under Mississippi Code Annotated section 41-29-147 as a subsequent offender based on a nolo con-tendere plea. Jackson argues that using a prior conviction based on a nolo contende-re plea to enhance sentencing is improper. Jackson relies on
 
 Keyes v. State,
 
 312 So.2d 7, 8-10 (Miss.1975), which prohibits the admissibility of evidence of a previous conviction based on a nolo contendere plea in another case. However, the State points to
 
 Bailey v. State,
 
 728 So.2d 1070, 1073(¶ 15) (Miss.1997), where the supreme court considered the prohibition and held that it does not apply to sentencing enhancements. Therefore, the use of the prior misdemeanor conviction to indict Jackson as a second and subsequent offender was not improper.
 

 ¶ 26. Jackson also argues that the indictment does not cite the proper statute. He claims that the first count of the indictment lists Mississippi Code Annotated section 41-29-115(a)(4), which does not apply to possession of marijuana. However, it gives notice to Jackson of which controlled substance he was accused of possessing. The very top of the indictment lists the applicable statutes under which Jackson was indicted. Further, the language of the indictment is clear and provides Jackson notice of the charges against him. This issue is without merit.
 

 VI. Whether the jury instructions were improper.
 

 ¶ 27. Jackson argues that each of the jury instructions were improper because the trial court left out key words and used its own words that prejudiced the defendant. Jackson neither points to any specific language that prejudiced him, nor to what language he would have preferred. He is specific in his allegation that instructions S-l and S-2 were improper. Those instructions both used the language “unlawfully, willfully and feloniously” rather
 
 *930
 
 than “knowingly or intentionally,” the language used in the indictment. In making a determination of whether a trial court erred in granting or denying various jury instructions, we examine the jury instructions as a whole, with no particular instruction read alone or taken out of context.
 
 Jenkins v. State,
 
 913 So.2d 1044, 1050(¶ 17) (Miss.Ct.App.2005).
 

 ¶ 28. Neither Jackson nor his attorney made any objection regarding the language of either of these jury instructions at trial; therefore, the issue is procedurally barred.
 
 See McKinley v. State,
 
 873 So.2d 1052, 1054(119) (Miss.Ct.App. 2004) (citing
 
 Smith v. State,
 
 724 So.2d 280, 317 (¶ 143) (Miss.1998)). Notwithstanding the procedural bar, we will address the crux of his argument that his indictment was essentially amended by the jury instructions by using the language unlawfully, willfully, and feloniously rather than knowingly or intentionally.
 

 ¶ 29. Our supreme court has recognized that the terms are interchangeable. In
 
 Moore v. State,
 
 676 So.2d 244, 246 (Miss. 1996), the supreme court held that an indictment and jury instructions which interchanged words of intent still covered the issue of intent, stating:
 

 This Court has stated that “it is inconceivable that an act willfully done is not also knowingly done.” Stated differently, “willfully” means “knowingly.” Moreover, “wil[l]ful” means nothing more than doing an act intentionally.
 

 Id.
 
 (internal citations omitted). We find that the jury was properly instructed on the level of intent required of Jackson to be guilty of the crimes charged. This issue is without merit.
 

 ¶ 30. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, POSSESSION OF A CONTROLLED SUBSTANCE, AND FINE OF $250, AND COUNT II, POSSESSION OF A CONTROLLED SUBSTANCE, AND SENTENCE OF EIGHT YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHO-MA COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ„ CONCUR.