# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00712-COA

**LABRANDON KEITH GRACE A/K/A**        **APPELLANT**
**LABRANDON GRACE**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/26/2018 |
| TRIAL JUDGE: | HON. CHARLES W. WRIGHT JR. |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | ERIN ELIZABETH BRIGGS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KATY T. GERBER |
| | JASON L. DAVIS |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/10/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. LaBrandon Grace appeals his convictions of armed robbery and felon in possession of a firearm. He raises two issues: (1) the trial court erred in admitting out-of-court identification testimony, and (2) his trial counsel was ineffective in failing to request a circumstantial-evidence jury instruction. Finding no merit, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. The Citizens Bank in Scooba, Mississippi, had been robbed. Shortly before, Grace

and his nephew, Christopher,[1] had been seen outside the bank lounging in a teal Lincoln vehicle parked underneath a shade tree. A series of local tips led the police to believe the duo was responsible for the crime. Police found the teal Lincoln cruising down the highway shortly after the bank robbery. After a burst of high pursuit and a chase on foot, Grace and his nephew were arrested.

¶3. Items purportedly used during the commission of the robbery—a blue latex glove and a mask made from a pair of leggings—were found in and around Grace's car. DNA found on both items was consistent with Grace's DNA. The gun used in the commission of the robbery and the money stolen from the bank were recovered from a field in the area where Grace was captured.

¶4. Law enforcement showed one bank teller a photograph of Grace and another bank teller photographs of Grace and his nephew. Both tellers recognized Grace because he had entered the bank the day before the robbery and inquired about opening a bank account. Since Grace was disguised during the robbery, the tellers could not identify him as the individual who robbed the bank. The teller who was shown the photograph of Grace's nephew was unable to identify him.

¶5. A jury convicted Grace of two counts of armed robbery and one count of felon in possession of a firearm. He was sentenced as a non-violent habitual offender to life imprisonment on both armed robbery convictions and to ten years on the felon-in-possession

---

[1] This Court recently affirmed Christopher Grace's conviction and sentence. *Grace v. State*, 2017-KA-01633-COA, 2019 WL 1915360, at *1 (¶1) (Miss. Ct. App. Apr. 30, 2019).

conviction, with all the sentences to be served consecutively to another sentence Grace was currently serving.

## DISCUSSION

### I. The out-of-court identification was not admitted in error.

¶6. Grace argues that the trial court erred in allowing the out-of-court identification of him by the two bank tellers. Since Grace failed to object to the identification evidence, this issue is procedurally barred from our review. *See Ronk v. State*, 172 So. 3d 1112, 1135 (¶55) (Miss. 2015). Regardless of the bar, Grace's issue is without merit.

¶7. Grace is correct that "a witness's initial identification of the defendant, by means of a single photograph, is impermissibly suggestive." *Ronk*, 172 So. 3d at 1136 (¶56) (internal quotation mark omitted). Even so, "the admission of an impermissibly suggestive pretrial identification, without more, does not offend due process." *Id*. The reliability of the identification must then be assessed using the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 200 (1972).

¶8. But Grace's argument is misplaced. The purpose of these procedures is to prevent due-process violations that might result from a suggestive out-of-court identification tainting an in-court identification. Here, neither teller could identify Grace as the bank robber. In fact, one of the tellers testified that there was "no way to identify [the bank robber]." Both tellers did recognize Grace as a customer at the bank the day before the robbery. Since the witnesses could only testify to having seen Grace at the bank the day before the robbery—and that fact was not in dispute—we cannot find that their testimony was admitted

3

in error. This issue is without merit.

## II. Grace's ineffective-assistance-of-counsel claim may be raised in a petition for postconviction relief.

¶9. Grace argues that his trial counsel failed him by not requesting a circumstantial-evidence jury instruction. Grace represented himself during trial but had appointed counsel on stand-by. In general, if "a defendant declines appointed counsel and proceeds to represent himself with appointed counsel only standing by to provide assistance if called upon[, then] the defendant will not be heard to complain on appeal of ineffective assistance of counsel." *Davis v. State*, 811 So. 2d 346, 351 (¶10) (Miss. 2001).

¶10. Yet Grace's counsel was not on stand-by for the entirety of the trial. While Grace claims on appeal that his appointed lawyer was only "stand-by" counsel, the reality is more complex. The appointed counsel did not commence trial on stand-by. The appointed counsel represented Grace during a pretrial hearing a few weeks before trial and arrived at the outset of trial prepared and with a paralegal. As trial began, Grace assumed more duties of his own representation. During voir dire, appointed counsel informed the trial court that the defendant wished to conduct his own voir dire, which came as a surprise to defense counsel. The defendant also gave his own opening statement. It was only after the direct examination of the first witness when appointed counsel told the trial court that the defendant was "for lack of a better term, representing himself and wishes to cross-examine all of the witnesses."

¶11. After the testimony of the second witness, the trial court stated that "[t]he Court was unaware other than [Grace's] request to voir dire and do the opening statement" that he was planning to represent himself, especially since no motion had been filed on that point. It was

4

only then—after jury selection, opening statements, and the testimony of two bank tellers—the trial court informed Grace that his appointed counsel was "there to assist you."

¶12.    Appointed counsel further played a limited role during the jury-instruction conference. Defense counsel withdrew one of the two proffered defense instructions as duplicative of the trial court's draft instruction for the jury not to take an inference against the defendant for not taking the stand. The trial court refused to give the second instruction. It does not appear in the record, and there is no indication of what the instruction addressed.

¶13.    The trial court would have been within its discretion in granting a circumstantial evidence instruction. Circumstantial evidence does not go "directly to prove the existence of a fact" but instead "gives rise to a logical inference that such fact does exist." *Id.* "Direct evidence, on the other hand, must directly and not by inference implicate the accused and not just show that there has been a crime." *Id.* The evidence against Grace was substantial, but there was no confession or surveillance video or eyewitness testimony that directly implicated the defendant. There was circumstantial evidence that the bank was robbed by a person wearing a mask and gloves, and a pair of latex gloves and a mask were found at the scene of the arrest; Grace's DNA was found on them. Similarly, money found at the scene of Grace's arrest near where he abandoned the Lincoln matched "bait money" stolen from the bank—low denomination bills with recorded serial numbers. This evidence was persuasive and compelling but ultimately still circumstantial.

¶14.    Since the refused jury instruction is not in the record, we cannot know if it was a circumstantial-evidence instruction. The record also does not reveal if appointed counsel

drafted the two jury instructions or when they were submitted. Under the unique facts of the evolution of appointed counsel's role in this trial, we will not bar as a matter of law Grace's claim for ineffectiveness. Given the fact-specific nature of any claim for ineffectiveness, any claim based on the theory of ineffective assistance of counsel is better developed through a petition for postconviction relief (PCR). Grace may raise his ineffectiveness claims in a properly filed PCR petition. *See Pace v. State*, 242 So. 3d 107, 118 (¶28) (Miss. 2018) (explaining that because appellate courts are limited to the trial record on direct appeal, generally ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings).

¶15. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**