# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-KA-01101-COA

**LARRY WESLEY LAWRENCE**                                                  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/15/1999 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | EDMUND J. PHILLIPS JR. |
| | ROBERT N. BROOKS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS JR. |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | 06/15/1999: BURGLARY OF A DWELLING HOUSE (HABITUAL OFFENDER): SENTENCED TO 25 YEARS IN THE MDOC, WITHOUT THE BENEFIT OF PAROLE, SUSPENSION OR REDUCTION OF SENTENCE |
| DISPOSITION: | AFFIRMED - 04/17/2001 |
| MOTION FOR REHEARING FILED: | 4/27/2001; denied 7/17/2001 |
| CERTIORARI FILED: | 7/24/2001; granted 9/20/2001 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., PAYNE, AND LEE, JJ.

McMILLIN, C.J., FOR THE COURT:

¶1. Larry Lawrence was arrested on December 30, 1998, without a warrant, after items matching the description of property taken in a burglary were discovered in his vehicle. He was taken into custody on a charge of possession of stolen property. Lawrence was held without benefit of a court appearance from the time of his arrest until the morning of January 5, 1999, when he was brought before the Circuit Court of Scott County. Shortly before that court appearance, Lawrence signed a written waiver of his *Miranda* rights, confessed to the crime and gave information regarding the location of some additional property taken in the burglary. Lawrence was tried and convicted of burglary, based largely on his confession and evidence growing out of that confession. He now appeals claiming that the trial court erred when it refused to suppress his confession based on the fact that it was an outgrowth of an unconstitutional confinement. Lawrence raises four additional issues in his principal brief and filed a supplemental *pro se* brief in which he attempts to present four more issues. For reasons we will proceed to explain, we affirm Lawrence's

conviction and resulting judgment of sentence.

## I.

## The Confession

¶2. Lawrence suggests that the failure to grant him an initial appearance within forty-eight hours of his detention renders his subsequent confession, given while still incarcerated, inadmissible. The United States Supreme Court has determined that the failure to have a neutral magistrate make a probable cause determination regarding the basis for confinement within forty-eight hours of a warrantless arrest violates the Fourth Amendment's shield against unreasonable seizures (subject to certain exceptions having no application in this case). *County of Riverside v. McLaughlin,* 500 U.S. 44, 57-58 (1991). Uniform Circuit and County Court Rule 6.03, apparently adopted to meet this requirement, states, in part, as follows:

> Every person in custody shall be taken, without unnecessary delay and within 48 hours of arrest, before a judicial officer . . . . If the arrest has been made without a warrant, the judicial officer shall determine whether there was probable cause for the arrest and note the probable cause determination for the record.

URCCC 6.03.

¶3. The State argues in its brief that the admitted failure to comply with this rule can be excused by virtue of the fact that law enforcement officials, after Lawrence had been arrested, went before a magistrate and obtained an arrest warrant which was subsequently served on Lawrence at the place of his confinement. We reject that argument. The State cites no authority that such a procedure is a proper substitute for compliance with the applicable rules and our own research has uncovered no support for the proposition. It is true that the initial appearance to determine probable cause may be extremely informal and need not be a full-scale adversarial proceeding. *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975). Yet all case law on the subject reviewed by this Court suggests that the accused has at least the minimal protection of being present during the course of the proceeding, no matter the informality with which it is conducted. Aside from that consideration, we state what should be an obvious proposition. Once a procedure intended to protect an accused's constitutional rights has been properly established, law enforcement officials are not free to disregard the mandated procedure and, by some freelance process, design a substitute procedure that could arguably pass constitutional muster. We, therefore, proceed on the basis that, at least for purposes of analysis of this issue, Lawrence's Fourth Amendment rights were violated when he was denied an initial appearance within forty-eight hours of his arrest.

¶4. Despite this finding, we note that an improper detention, of itself, is not ground to set aside a criminal conviction subsequently obtained. *Frisbie v. Collins,* 342 U.S. 519, 522 (1952); *Esparaza v. State,* 595 So. 2d 418, 423 (Miss. 1992). Neither is the fact that a confession obtained after the time has expired under the rules for an initial appearance, standing alone, a sufficient basis to exclude the confession. *Powell v. Nevada,* 511 U.S. 79, 84 (1994); *Veal v. State,* 585 So. 2d 693, 699 (Miss. 1991). Thus, we conclude that the failure to give Lawrence a timely initial appearance is but one of a number of factors to be considered in determining whether, in the totality of the circumstances, it can be shown that his confession was not freely and intelligently given. In this case, Lawrence alleges no specific prejudice growing out of his continued confinement beyond the fact of the confinement itself. Neither does he point to other

considerations that might, in concert with the delay in getting him before a magistrate, cast doubt on the voluntary nature of his statement. Rather, the record reflects that he freely and voluntarily waived his rights under *Miranda* and proceeded to confess to the crime. We find no basis under constitutional principles to exclude this confession.

## II.

### *Batson* Error

¶5. The State exercised a number of peremptory challenges against African American venire members. This prompted the defense to suggest that the State was purposely attempting to exclude jurors based solely on race, a practice forbidden by the case of *Batson v. Kentucky,* 476 U.S. 79 (1986). The trial court did an informal statistical analysis of the strikes and concluded that the pattern of strikes raised a prima facie case of discriminatory practice. Under *Batson* procedures, this finding required the State to offer race-neutral reasons for the strikes. *Id.* at 93-94. The State proceeded to do so, and the trial court, as to each strike, concluded that the State offered valid race-neutral reasons. As a result, all of the State's peremptory challenges of African Americans were allowed.

¶6. In this appeal, Lawrence disputes only one of those challenges, claiming, not that the reason offered was discriminatory on its face, but that it was pretextual and intended to disguise the true invidious purpose of the State to exclude African Americans from the jury. The State said the challenge was based on information from an African American deputy sheriff indicating that the juror suffered from mental or emotional problems. The State contended that these problems would interfere with the potential juror's ability to serve effectively. The defense offered no countering evidence or argument to refute the claim that this potential juror's mental problems were such as to render her service undesirable. The trial court, noting that the State had accepted another African American juror at the same time it was peremptorily challenging this juror, concluded that the reason offered was both legitimate and race neutral. In assessing whether a facially race-neutral reason is actually serving to mask a hidden racially-based motivation in shaping the jury, the trial court is vested with substantial discretion. *Davis v. State*, 767 So. 2d 986 (¶21) (Miss. 2000). There is nothing in this record or in Lawrence's argument before this Court on appeal to convince us that the trial court abused its discretion in deciding to allow the State this peremptory strike.

## III.

### Denial of Psychiatric Evaluation

¶7. Lawrence insisted on representing himself during the trial phase; however, the trial court appointed an attorney to advise Lawrence in his efforts. This attorney, prior to trial, moved the court to require Lawrence to undergo a psychiatric examination to determine whether he was mentally fit to stand trial. The motion was based upon evidence from an earlier motion hearing in which it was reported that Lawrence was under a suicide watch in jail and had attempted suicide twice since his incarceration. The trial court concluded that this evidence was not sufficient to raise an issue of Lawrence's mental competency to stand trial and Lawrence now raises that as error. The burden of demonstrating that a reasonable probability exists that the defendant is incapable due to mental problems of understanding the nature of the proceedings against him and rationally participating in his defense is on the defendant. *Richardson v. State*, 767 So. 2d 195 (¶41) (Miss. 2000). The trial court is charged with making that determination, and an appellate court may overturn that decision only if it concludes that it was against the overwhelming weight of the evidence.

*Emanuel v. State*, 412 So. 2d 1187, 1189 (Miss. 1982). The trial court held that allegations of previous suicide attempts and nothing more was insufficient to raise a legitimate issue of Lawrence's mental abilities to appreciate the nature of a trial and to participate in an informed and meaningful way in the defense of the case. Prior to the hearing on the motion, the trial court had undertaken a lengthy examination of Lawrence when considering his request to represent himself and was convinced that Lawrence was lucid, intelligent, aware of the nature of the proceedings, and understood fully the risks associated with representing himself. We do not find an abuse of discretion in the fact that, after that thorough investigation into Lawrence's abilities to represent himself, the trial court was not persuaded to change its view based on a report of two unsuccessful suicide attempts.

## IV.

### Lawrence's Pro Se Defense

¶8. After insisting at the trial level that he be permitted to conduct his own defense, Lawrence now argues on appeal that the trial court erred in acceding to his own demand. Lawrence's argument on this point consists of a largely conclusory statement that the trial court was less than thorough in its efforts to ensure itself that Lawrence was fully aware of the consequences of representing himself. *See, e.g., Armstead v. State*, 716 So. 2d 576 (¶19) (Miss. 1998); URCCC 8.05. We have reviewed the dialogue between the court and Lawrence when the matter was under consideration and find that the matter was explored in depth. We also note that Lawrence was provided with an attorney to advise him and that, in fact, the attorney took a much more active role in the defense than merely acting as an adviser. We find no abuse of discretion in the handling of this matter that would require this Court to intercede and reverse the conviction.

## V.

### Failure to Quash the Indictment

¶9. Lawrence makes a perfunctory argument that the trial court should have quashed the indictment on its own motion, apparently because it contained charges for which Lawrence did not receive an initial appearance. Lawrence was originally arrested on a charge of receiving stolen property and his initial appearance related to that charge. However, a grand jury subsequently indicted him for burglary based on the fact that subsequent information implicated Lawrence in the burglary itself and not just for possessing property derived from the burglary.

¶10. This issue lacks merit for any number of reasons. In the first place, this Court normally does not consider issues not first presented to the trial court, and the record is clear that Lawrence did not seek to have the indictment quashed in the circuit court. *Florence v. State*, 755 So. 2d 1065 (¶19) (Miss. 2000). Aside from that, a defendant indicted by a grand jury is not entitled to an initial appearance as to the charges in that indictment. *McClurg v. State*, 758 So. 2d 473 (¶19) (Miss. Ct. App. 2000), URCCC 6.05. Finally, as we have already observed, denial of an initial appearance unaccompanied by a showing of some prejudice arising from the denial is not ground to void a criminal conviction and would thus not constitute a valid basis to quash an indictment. *McClurg*, 758 So. 2d 473 at (¶19), *Florence* 755 So. 2d 1065 at (¶19).

¶11. The remaining issues were raised by Lawrence, proceeding pro se, in a supplemental brief.

## VI.

## Sufficiency of the Evidence

¶12. In this issue brought in Lawrence's *pro se* supplemental brief, Lawrence urges that the trial court erred in denying his JNOV motion. Such a motion tests the sufficiency of the State's evidence. *Johnson v. State*, 642 So. 2d 924, 927 (Miss. 1994). Lawrence's argument on this point begins with the proposition that some of the most damaging evidence, such as his confession, should have been excluded and, without that evidence, there is nothing implicating him in the crime of burglary. The evident fallacy of that argument is that, as we have already determined, the evidence was properly admitted. We are required to consider all the evidence in the light most favorable to upholding the verdict. *Daniels v. State*, 742 So. 2d 1140 (¶11) (Miss. 1999). Viewed in that way, there was sufficient evidence presented as to all the essential elements of the crime.

## VII.

## Suppression of Evidence

¶13. Lawrence makes a heavily fact-laden argument that the trial court erred in admitting into evidence the items discovered in Lawrence's vehicle when he was initially stopped. His argument consists primarily of an assertion that the articles could not have been in plain view as the officer testified and that he had not given permission for a more thorough search of the vehicle. Those were disputed issues of fact resolved by the trial court sitting as trier of fact in the suppression hearing. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). Such findings are entitled to substantial deference when attacked on appeal. *Id.* We find Lawrence's argument unpersuasive.

## VIII.

## Suppression of Confession

¶14. Lawrence attacks a second time the trial court's refusal to suppress his confession. His argument, once again, consists essentially of an assault on the credibility of the police officers testifying as to the voluntariness of Lawrence's statements. The resolution of such disputed issues of fact is for the trial court and the court's determination is entitled to great deference. *Id.* We find no abuse of discretion in the trial court's decision.

## IX.

## Ineffective Assistance of Counsel

¶15. After having strenuously asserted his right to represent himself, Lawrence now complains that he received ineffective assistance of counsel by virtue of the services performed by the attorney appointed to advise him in his defense. His grievance consists of reciting a number of instances where the attorney allegedly failed to follow Lawrence's directions in presenting his defense. Lawrence does not explain why Lawrence himself, essentially acting as lead counsel in the defense, could not have done the things himself. *See Estelle v. State,* 558 So. 2d 843, 847 (Miss. 1990). We find this issue to be without merit.

## X.

## Lack of Initial Appearance

¶16. Lawrence attempts in his final issue to bolster his appellate counsel's argument regarding the suppression of his confession. The supplemental argument continues to be based on the fact that the confession was given when he remained incarcerated beyond the time for an initial "probable cause" appearance before a neutral magistrate. The supplemental argument adds nothing new and we remain satisfied that our resolution of the question as set out in Issue I herein is correct.

¶17. **THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF CONVICTION OF BURGLARY OF A DWELLING HOUSE AND SENTENCE OF TWENTY-FIVE YEARS, WITHOUT BENEFIT OF PAROLE, SUSPENSION OR REDUCTION OF SENTENCE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.**

**KING AND SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.**