GRIFFIS, P.J.,
for the Court:
¶ 1. During his trial for possession of a weapon by a convicted felon and simple assault on a peace officer, Gordon Wash became dissatisfied with his attorney and decided to represent himself. The trial court allowed him to do so, with the assistance of his court-appointed counsel. Wash was found guilty on Count I, possession of a weapon by a convicted felon, and guilty on Count II, but of the lesser offense of disorderly conduct. Wash now appeals, arguing he is entitled to a new trial because (1) the trial court failed to make an on-the-record determination as to whether he knowingly and intelligently waived his right to counsel; and (2) his counsel, who assisted him during trial, was ineffective. Finding no reversible error, we affirm.
FACTS
¶ 2. On September 2, 2008, Wash and his then-girlfriend Monica Nix got into an argument. Nix decided to leave the house with her two children, one of whom was Wash’s daughter. As Nix got into her car, she “heard a pow,” and saw “a little steam” rising from the hood of her car. Although Nix did not see Wash shoot the car, Wash and his brother were the only other people outside the house with her, and Nix had only argued with Wash. Nix testified that she saw Wash holding a gun while they were inside the residence, and that Wash had been drinking. Once she calmed down, Nix got into her car and went to a friend’s house. Wash followed, and the altercation continued. Nix left the children with the friend, and went to Se-baster’s Store in Hurley, Mississippi. Wash again followed.
¶ 8. Deputy Gene Starr with the Jackson County Sheriffs Department responded to a call regarding potential domestic violence at Sebaster’s Store. As he arrived, a man came out of the store and quickly walked in the opposite direction after seeing Deputy Starr. Deputy Starr testified that “about five seconds later,” a female came out of the store, stating: “That MF just shot at me.” She pointed at Wash, and told Deputy Starr that Wash “had a gun in his pants.” Deputy Starr pursued Wash, who ran toward the woods. Deputy Starr caught up to Wash, and a struggle ensued. Deputy Starr sprayed Wash with pepper spray. He then threatened to use his Taser, at which point Wash surrendered. Deputy Starr did not find a gun on Wash, but a nine-millimeter handgun was found on the ground near Sebaster’s Store. Two .38-caliber bullets were found in Wash’s sock.
¶ 4. Wash was indicted on April 15, 2009, on charges of possession of a weapon by a convicted felon and simple assault on a peace officer. His trial was set to begin on August 18, 2009. When Wash failed to appear on this date, the assistant public defender appointed to represent Wash informed the trial court that Wash had gone “to find him a new lawyer.” A bench warrant was issued for Wash’s arrest, and the trial was rescheduled. Wash failed to appear for trial on September 4, 2009, and again on October 9, 2009. After various delays, Wash appeared in court on October 5, 2010. The trial was delayed again, pending a mental evaluation. Psychologist Dr. Stefan Massong attempted to conduct the evaluation, but Wash refused to participate. Wash explained that the scheduled evaluation “went past [his] trial date,” and it was simply a way for his attorneys to continue “detaining” him. The judge explained that the evaluation was not past his trial date, and the court was detaining him, not his attorneys. Wash insisted that the evaluation was unnecessary and requested a trial date. His request was granted, and his two-day trial began on *250 February 7, 2012, in the Jackson County Circuit Court. Wash represented himself, with the assistance of the court-appointed public defender. He was found guilty of possession of a weapon by a convicted felon and disorderly conduct. He was sentenced to ten years for the possession charge and six months for the disorderly-conduct charge, all in the custody of the Mississippi Department of Corrections. He was also ordered to pay a $1,000 fine on each count. Wash’s post-trial motions were denied, and he now appeals.
ANALYSIS

1. Whether the trial court erred in allowing Wash to represent himself, a. Self-representation

¶ 5. Wash argues the trial court failed to ensure that he “knowingly and voluntarily” entered into self-representation under Uniform Rule of Circuit and County Court 8.05. Wash asserts that an on-the-record examination was especially needed in this case because of the prior order for a mental evaluation, which Wash refused to undergo. Because the right to self-representation is a constitutional guarantee under the Sixth Amendment, our standard of review is de novo. Hearn v. State, 3 So.3d 722, 732 (¶ 25) (Miss.2008).
¶ 6. On the day of trial, Wash appeared in court, represented by public defender Brice Kerr. After Kerr completed his opening statement on Wash’s behalf, Wash asked the trial judge if he could represent himself. The jury was excused from the courtroom, and Wash explained that Kerr had refused to accept his theory of defense. Wash believed he could not be found guilty of being a felon in possession of a firearm since his prior felony was “old” and “nonviolent.” Wash referenced a 1995 felony conviction for drug possession.[1] The judge explained that Wash’s theory was incorrect, as Mississippi Code Annotated section 97-37-5 ' (Supp.2012) makes it unlawful for any convicted felon to possess a weapon. The judge then asked Wash what he wanted to do next. Wash first stated that he wanted another attorney because of Kerr’s unwillingness to present his defense. Wash then argued he had a conflict of interest with Kerr due to a prior matter. The trial court found no merit to Wash’s arguments, noting that Kerr was Wash’s second court-appointed attorney, and that Wash could have hired his own counsel. Wash then moved for a change of venue. As there was no ground to change venue, the motion was denied. Wash then pled “no contest” to the charges. When the trial court explained that a no-contest plea was, in effect, a guilty plea, Wash changed his mind.
¶ 7. Wash continued to insist on self-representation. The judge conceded, and the following exchange occurred:
THE COURT: ... If you want to represent yourself, you have that right. I don’t advise that you do that[,] but you have the right to do that.
WASH: Yes, I want to represent myself.
THE COURT: And Mr. Kerr is going to sit right there with you through the whole trial to make sure you don’t say anything you shouldn’t, to give you advice, if you want to represent yourself. But you have to follow the rules of evidence.
WASH: Yes, ma’am.
¶ 8. Before a trial court allows a defendant to represent himself, the defendant must be competent, and the requirements of Rule 8.05 must be met to determine *251 whether the choice is knowing and voluntary. Rule 8.05 states:
When the court learns that a defendant desires to act as his/her own attorney, the court shall on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:
1. The defendant has a right to an attorney, and if the defendant cannot afford an attorney, the state will appoint one free of charge to the defendant to defend or assist the defendant in his/her defense.
2. The defendant has the right to conduct the defense and that the defendant may elect to conduct the defense and allow whatever role (s)he desires to his/her attorney.
3. The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct himself/herself within the same rules as an attorney, that these rules are not simple and that without legal advice his/her ability to defend himself/herself will be hampered.
4. The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.
5. Other matters as the court deems appropriate.
After instructing the defendant and ascertaining that the defendant understands these matters, the court will ascertain if the defendant still wishes to proceed pro se or if the defendant desires an attorney to assist him/her in his/her defense. If the defendant desires to proceed pro se, the court should determine if the defendant has exercised this right knowingly and voluntarily, and, if so, make the finding a matter of record. The court may appoint an attorney to assist the defendant on procedure and protocol, even if the defendant does not desire an attorney, but all disputes between the defendant and such attorney shall be resolved in favor of the defendant.
¶ 9. We find that Wash did not proceed pro se as contemplated by Rule 8.05; thus, there is no need to determine whether Wash “knowingly and voluntarily” waived his right to counsel. See Hearn, 3 So.3d at 734 (¶ 29). Wash “was never left to his own defense” as a pro se litigant. Id. Rather, Kerr “functionally remained counsel throughout trial in the form of ‘hybrid representation.’ ” Id.
¶ 10. “Hybrid representation consists of ‘the participation by an attorney in the conduct of the trial when the defendant is proceeding pro se.’ ” Id. (quoting Metcalf v. State, 629 So.2d 558, 562 (Miss.1993)). The concept of hybrid representation stems from the Mississippi Constitution, Article 3, Section 26, which states that “[i]n all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both .... ” (Emphasis added). We consider the following factors to determine whether pro se or hybrid representation occurred:
The defendant’s accessibility to counsel; whether and how often he consults with counsel up to the point of the request; the stage of trial at which he requests a participatory role in his defense; the magnitude of the role he desires to assume; whether the trial court encourages immediate and constant accessibility of counsel; and the nature and extent of assistance of counsel which has been provided up to the point of the request, *252 including both substantive and procedural aid.
Hearn, 3 So.3d at 734 (¶ 29).
¶ 11. Like the defendant’s court-appointed attorney in Hearn, Kerr was present at Wash’s counsel table throughout the trial, and Wash consulted with him on multiple occasions. See id. at 734 (¶ 30). Kerr filed pretrial motions for Wash, including motions in limine, and he represented Wash at several pretrial hearings.[2] See id. Kerr conducted voir dire examination of the potential jurors. See id. Wash conferred with Kerr about various questions to ask witnesses, and conferred with him before deciding to testify on his own behalf. See id. Kerr examined Wash on the stand. See id. at 735 (¶ 32). Upon the trial court’s suggestion and with Wash’s consent, Kerr divided the time for closing argument with Wash. See id. Kerr proposed all jury instructions for Wash, and objected to multiple instructions offered by the State. See id. He represented Kerr during sentencing, and was instructed by the trial court to explain to Wash the process of filing an appeal. See id. In addition, Kerr made the opening statement at trial. He raised objections throughout trial, as well as conducted the cross-examination of Deputy Starr. And he moved for a directed verdict at the close of the State’s case-in-chief.
¶ 12. Like the defendant in Hearn, Wash “assumed a substantial role in his defense....” Id. at (¶ 31). However, “the totality of the circumstances” must be considered. Id. at (¶ 33). As in Hearn, Kerr “was available throughout the entire trial and participated on several occasions. His role was ‘not merely that of a skilled bystander, but of a substantive litigator.’ ” Id. (quoting Metcalf, 629 So.2d at 565). Since Wash was “never ... fully without the assistance of counsel, [he] cannot now complain about inadequate warnings when he received the best of both worlds — the assistance of counsel while conducting his own defense.” Id,.
¶ 13. Even if no hybrid representation were found, the requirements of Rule 8.05 were met. Wash was informed multiple times by the trial court of his right to an attorney. Wash was told he was required to comply with the rules of evidence during trial. And he was allowed access to his former counsel for advice throughout the trial. While Wash was not specifically told that proceeding pro se usually increases the likelihood of an unfavorable outcome, the trial judge did specifically advise him against self-representation. The trial judge also told Wash: “[The public defenders] that we have [are] good lawyers[,] and they know what they’re doing. I can assure you, they know far more about what they’re doing than you do.” See Jackson v. State, 1 So.3d 921, 925 (¶¶ 7-8) (Miss.Ct.App.2008) (similar warning found sufficient).
¶ 14. Because Wash received substantive assistance from his counsel in the form of hybrid representation, no on-the-record examination was necessary to determine whether he “knowingly and voluntarily” waived the right to counsel. Regardless, the trial court made it sufficiently clear to Wash the requirements and perils of self-representation. This issue is without merit.

b. Competency to Stand Trial

¶ 15. Wash also argues that he was never deemed competent to stand trial since he refused to participate in the court-ordered mental evaluation.
*253 ¶ 16. Uniform Rule of Circuit and County Court 9.06 states in part:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with [section] 99-13-11 of the Mississippi Code Annotated of 1972.
After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial.
¶ 17. Our supreme court has held that “the standard for competence to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him.” Hairston v. State, 4 So.3d 403, 405 (¶ 5) (Miss.Ct.App.2009) (quotations omitted). Wash demonstrated during trial that he could consult with his attorney, and that he reasonably understood the proceedings. He was able to question witnesses and conduct cross-examination. When he could not effectively word a question, he asked Kerr for assistance. While Wash’s theory of defense was not properly based on the law, the law was nonetheless explained to him, and he still chose to proceed under that theory. His decision to do so did not make him incompetent.
¶ 18. The defendant in Wheat v. State, 420 So.2d 229, 233 (Miss.1982), also refused to participate in a mental evaluation, but was allowed to stand trial. Defendant Wheat’s counsel initially requested the mental evaluation, but later withdrew the request. Id. The prosecution then requested a mental evaluation. Id. During a hearing, Wheat told the trial court: “I think I’m sane.... If the [c]ourt orders [a mental evaluation,] I’m going to refuse it. I’m ready to go to trial Monday.” Id. The trial court questioned Wheat, and found no need for an evaluation. Id. at 237. The Mississippi Supreme Court found no error in the trial court’s decision to allow Wheat to stand trial. Id. at 238.
¶ 19. After Wash refused to participate in the mental evaluation, no other question was raised regarding his competency, and no objection was made to his ability to stand trial. The mental evaluation was ordered on October 4, 2010, and trial occurred almost a year and a half later on February 7, 2012. The trial judge was able to observe Wash’s behavior, and did not find that he was incompetent at the time of trial. This issue is without merit.

2. Whether Wash received effective assistance of counsel.

¶ 20. Wash next argues that his trial counsel provided ineffective assistance of counsel.
¶ 21. Generally, self-representation will preclude a claim that stand-by counsel rendered ineffective assistance. In Jackson v. State, 943 So.2d 720, 729 (¶ 29) (Miss.Ct.App.2006), the Court held:
“It has been established by the Mississippi Supreme Court that as stand-by counsel, a defense attorney is ‘without authority, discretion or control!,] and the charge that he rendered constitutionally ineffective assistance is without merit.’ ” Scarbough v. State, 893 So.2d 265, 273 (¶ 27) (Miss.Ct.App.2004) (quoting Estelle v. State, 558 So.2d 843, 847 (Miss.1990)). Furthermore, we noted that “Estelle held that[,]where a defendant declines appointed counsel and proceeds to represent himself with appointed counsel only standing by to provide assistance if called upon[,] ... the defen *254 dant will not be heard to complain on appeal of ineffective assistance of counsel.” Id. ... As Jackson voluntarily assumed the role of trial counsel, he may not claim that his adviser failed to provide him with adequate representation. Simply put, Jackson may not now benefit on appeal from his own ineptitude at trial. This issue is without merit.
¶22. Here, as discussed above, Wash insisted on self-representation but actually received a hybrid representation at trial. Therefore, we consider this along with the principle that our appellate courts are hesitant to address ineffective-assistance-of-counsel claims on direct appeal. In Jackson v. State, 73 So.3d 1176, 1181 (¶ 20) (Miss.Ct.App.2011), this Court held:
[T]he merits of a claim of ineffective assistance of counsel brought on direct appeal should be addressed only when “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the-trial judge.” Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). The supreme court has held:
The question presented is not whether trial counsel was or was not ineffective but whether the trial judge, as a matter of law, had a duty to declare a mistrial or to order a new trial, sua sponte on the basis of trial counsel’s performance. “Inadequacy of counsel” refers to representation that is so lacking in competence that the trial judge has the duty to correct it so as to prevent a mockery of justice. Parham v. State, 229 So.2d 582, 583 (Miss.1969).
Id. at 1102 (¶ 8). If this Court does not reverse on other grounds and is unable to conclude that the defendant received ineffective assistance of counsel, it should affirm “without prejudice to the defendant’s right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.” Id. at 1101 (¶ 5). Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record. Id. at 1102 (¶ 6).
¶ 23. As a result, we conclude that Wash’s ineffective assistance of counsel claim would be more appropriately brought during post-conviction-collateral-relief proceedings. We note that the State has not stipulated that the record is adequate, and we find no obvious deficiencies that imposed a duty upon the circuit court to declare a mistrial. As such, we deny relief on this issue without prejudice so that Wash may, if he desires to do so, present a claim of ineffective assistance of counsel in a motion for post-conviction collateral relief.
¶ 24. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF TEN YEARS, AND COUNT II, DISORDERLY CONDUCT, AND SENTENCE OF SIX MONTHS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A $1,000 FINE ON EACH COUNT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
LEE, C.J., IRVING, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR, and JAMES, JJ., CONCUR. BARNES, J„ CONCURS IN PART AND IN THE RESULT.

. According to the record, the crime occurred in 1995, and the conviction occurred in 2000.

. Wash was represented by counsel on all pretrial matters. Assistant public defender Amanda Galle represented him until Wash became dissatisfied with her representation. Kerr then took over as counsel.